**Brenda BYRD and James Byrd, Plaintiffs,**

v.

**The PROCTOR & GAMBLE MANUFACTURING CO., et al., Defendants.**

**Civ. A. No. 83–131.**

United States District Court, E.D. Kentucky, Covington Division.

March 3, 1986.

---

Marcus S. Carey, Fort Mitchell, Ky., for plaintiffs.

Carl J. Stich, Jr., Cincinnati, Ohio, for defendants.

OPINION

BERTELSMAN, District Judge.

The defendant, The Proctor & Gamble Company, has filed a motion for Judgment

N.O.V. or for a new trial, following a verdict for the plaintiffs in the total amount of $16,470.00, in this products liability action.[1]

This action arises from the plaintiff Brenda Byrd's loss of the majority of her hair following her using Proctor & Gamble's Lilt home permanent. The case presents a textbook illustration of Kentucky product liability law concerning inadequate warnings.

On May 4, 1982, the plaintiff, Brenda Byrd, purchased a Lilt home permanent to use that afternoon, before she attended a banquet with her daughter at a local high school. Mrs. Byrd's sister applied the permanent at the sister's home. Mrs. Byrd was not happy with the results of the permanent, but she returned home and attended the banquet. The next morning she shampooed her hair and was horrified when it began to fall out in large chunks.

Ultimately, Mrs. Byrd lost the majority of the hair on the top of her head. She testified that she was so upset and humiliated that she was psychologically disabled from working for more than a year. This testimony was substantiated by a psychiatrist.

Proctor & Gamble did not seriously contest that its home permanent had caused the hair damage, but rather contended vigorously that the instructions for application of the product had not been followed by Mrs. Byrd's sister. More particularly, Proctor & Gamble offered convincing expert testimony that one of the steps in the instructions contained in the Lilt package must have been omitted. In the opinion of Proctor & Gamble's expert, Mrs. Byrd's sister must have neglected to rinse off the setting solution before applying the neutralizing solution. This would have the effect, the expert hypothesized, of leaving the hair in a brittle condition. Since Mrs. Byrd's hair was unusually fragile anyway, according to the expert, this omission caused the extensive hair damage she experienced.

Although the instructions contained in the home permanent kit were very clear,

[1]. Jurisdiction is founded on diversity of citizenship, 28 U.S.C. § 1332. Kentucky law applies.

*Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

there was no warning that failure to follow them closely or omission of any of the steps would lead to serious hair damage. Proctor & Gamble's testimony was that the drafters of the instructions felt that the inclusion of such warnings would only be confusing to the consumer. They concluded that it was a better and safer practice simply to make the instructions meticulously clear.

The Court submitted this case to the jury, using a special verdict, on the alternative theories of strict liability and inadequate warning. The special interrogatories presenting these theories were used without objection by either party and are quoted in the margin.[2]

The jury found that the product was not unreasonably dangerous, but that Proctor & Gamble failed to exercise ordinary care to provide an "adequate warning" against foreseeable misuse. It awarded damages for the time Mrs. Byrd testified she was off work and for her mental suffering and humiliation as well as the expense of seeing a dermatologist and a psychiatrist. Her husband was also awarded a small sum for loss of consortium.

Proctor & Gamble moved for a directed verdict at the close of the plaintiffs' case and again at the close of all the evidence on the ground that the only rational construction of the evidence was that the plaintiff's hair loss was caused by her sister's omission of a required step in the product application. This contention is now renewed.

The Court agrees that the only reasonable conclusion from the evidence is that Mrs. Byrd's problems were caused by a failure to follow the product instructions, as Proctor & Gamble argues. But that is not the end of the matter. Proctor & Gamble has failed to recognize and deal with the law of Kentucky concerning product warnings. It is on this basis that the jury found against Proctor & Gamble. The Court holds that the jury was within its province in resolving the warning issue against Proctor & Gamble. Therefore, the post-trial motions must be denied.

■ As has been stated, two alternate theories were submitted to the jury via the special interrogatories. First, the jury was asked whether the Lilt home permanent was defective in design, considering as part of the design the instructions and warnings accompanying the product.[3] The jury answered this question in the negative. In the opinion of the Court this was in accord with the weight of the evidence, since there was no proof that the injury would have occurred had the instructions been followed and they were detailed and quite clear.

2. Question No. 1–A: "If the Lilt home permanent described in the evidence, together with the accompanying instructions and warnings, created such a risk of injury to the hair of users, that an ordinarily prudent company engaged in the manufacture of home permanents, being fully aware of the risk would not have put the permanent on the market, the product was unreasonably dangerous. Have the plaintiffs proved by a preponderance of the evidence that the product was unreasonably dangerous and that such fact was a substantial factor in causing the damages to the hair of the plaintiff, Brenda Byrd?" The jury answered this question "no."

Question No. 1–B: "If in the exercise of ordinary care the defendant, Procter & Gamble Manufacturing Company, should have foreseen that a user of the Lilt home permanent would use it in a manner that might result in serious damage[s] to the hair, such as that sustained by the plaintiff, Brenda Byrd, then it was the duty of the defendant to give such user adequate warning of such risk. "Adequate warning" means such degree of warning as will afford to the user by the exercise of reasonable care on his own part fair and adequate notice of the possible consequences of the foreseeable use or even misuse of the product.

Have the plaintiffs proved by a preponderance of the evidence that the risk[s] of using the home permanent were such that (1) the defendant should have given an "adequate warning" to users such as the plaintiff, Brenda Byrd, *and* (2) that the warnings given with the product failed to constitute such "adequate warning," *and* (3) that such failure was a substantial factor in causing the injury to plaintiff's hair?" The jury answered this question "yes."

Question No. 1–B is based on the instruction approved in *Post v. American Cleaning Equipment Corp.*, 437 S.W.2d 516 (Ky.1969), discussed, *infra*.

3. *See* Question No. 1–A in n. 2, *supra; Nichols v. Union Underwear Co., Inc.,* 602 S.W.2d 429 (Ky. 1980); *Montgomery Elevator Co. v. McCullough,* 676 S.W.2d 776, 780 (Ky.1984).

The jury answered the second interrogatory to the effect that Proctor & Gamble had failed to give an adequate warning of the risks of possible misuse of the product. *See* n. 2, *supra.* Proctor & Gamble claims that this answer is inconsistent with that given to the first interrogatory.

In making this contention, Proctor & Gamble fails to appreciate the impact of *Restatement (Second),* Torts § 388, which reads as follows:

"§ 388. Chattel Known to be Dangerous for Intended Use. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

In *C & S Fuel, Inc. v. Clark Equipment Co.,* 552 F.Supp. 340 (E.D.Ky.1982), this Court had occasion to point out that there are two theories under which a warning can be inadequate in a product case under Kentucky law and that confusion can sometimes exist between these theories. For this reason, the jury's answers to the interrogatories based on the different theories was not inconsistent.

The first theory considers the warning as part of the design. "A product may be unreasonably dangerous in design, unless accompanied by a warning that it should not be put to a certain use." *C & S Fuel Inc.,* 552 F.Supp. at 347; *see Ulrich v. Kasco Abrasives Co.,* 532 S.W.2d 197, 200 (Ky.1976); *Leonard v. Uniroyal, Inc.,* 765 F.2d 560, 568 (6th Cir.1985) (citing *C & S Fuel Inc., supra,* with approval).

A good example of an otherwise dangerous design that has been made safe by an adequate warning is that of the working replica of an antique revolver in *Sturm, Ruger & Co., Inc. v. Bloyd,* 586 S.W.2d 19 (Ky.1979). There, the revolver's safety was purposely below the modern state of the art in order to make the gun an accurate replica, but a warning of the dangers involved was provided, thus rendering the design safe. Where, as in *Sturm, Ruger,* the warning is required as part of a safe design, the manufacturer is charged with hindsight with regard to such requirement under the rule of *Nichols v. Union Underwear, supra. Montgomery Elevator Co. v. McCullough,* 676 S.W.2d at 780; *C & S Fuel, Inc. v. Clark Equipment Co.,* 552 F.Supp. at 347.[4]

The second inadequate warning theory arises under principles of negligence, as recapitulated in *Restatement* § 388, *supra.* That is, a manufacturer or supplier has the duty to warn the consumer of non-obvious dangers inherent in the probable use of the product. In Kentucky this duty to warn also extends to the dangers likely to result from foreseeable misuse. This is the purport of the landmark case, *Post v. American Cleaning Equipment Corp.,* 437 S.W.2d 516 (Ky.1969).[5]

In *Post,* the Commonwealth's highest Court held that it was insufficient merely to give the consumer adequate directions, where there existed a serious danger of bodily harm from a foreseeable failure to follow the directions. In a frequently quoted excerpt, the *Post* court said:

"... it may be doubted that a sign warning, 'Keep off the Grass,' could be

---

**4.** *See* Annotations under § 388 in *Restatement in the Courts,* Cum.Supp.1984–85, for numerous cases commenting on the two distinct but overlapping duties to warn discussed here. *See also,* Miller, *The Kentucky Law of Products Liability in a Nutshell,* 12 N.Ky.L.Rev. 201, 212–17 (1985);

Comment, *Strict Liability and the Tortious Failure to Warn,* 11 N.Ky.L.Rev. 409 (1984).

**5.** *Post, supra,* involved both warning theories. Under the second theory, the manufacturer would not be charged with hindsight as with the first theory.

deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes. In some circumstances a reasonable man might well risk the penalty of not keeping off the grass although he would hardly be so daring if he knew the real consequences of his failing to observe the warning sign. Or, a warning to 'Keep in a Cool Place' might not be sufficient if the result of nonobservance was a lethal explosion of the container." 437 S.W.2d at 520.

So, in the present case, the detailed instructions were not sufficient where the result of non-observance was more or less immediate baldness.

"[T]he mere giving of directions as to use of a product, without giving a warning as to the consequences of foreseeable misuse, may be insufficient to satisfy the duty to warn." [6] The manufacturer must give both adequate directions for use and adequate warning of potential danger. Directions and warnings serve different purposes. Directions are required to assure *effective* use, warnings to assure *safe* use.[7]

█ The Kentucky Supreme Court has recently held that a manufacturer has a non-delegable duty "to warn the ultimate user of any dangers in its product other than those that are open and obvious." *Montgomery Elevator Co. v. McCullough,* 676 S.W.2d 776, 782 (Ky.1984). *McCullough* was a defective design case rather than one based on the principles of *Restatement Second,* Torts § 388, *supra,*[8] but this Court notes the concern shown by the Kentucky high Court for the protection of the consumer from latent dangers in the use of products. This policy requires that the verdict of the jury here be respected. For, although the evidence was uncontradicted

that Proctor & Gamble knew that failure to follow every step of its product instructions could result in the very type of injury suffered by Mrs. Byrd, it gave no warning whatever of the existence of such risk. Had it done so, Mrs. Byrd might have declined to use the product at all or she and her sister might have double checked to be sure no step was omitted.

The special verdict given to the jury was correct under Kentucky law and, under the evidence, the jury was fully justified in finding as it did.

Accordingly, the motion for Judgment N.O.V. or for a new trial must be DENIED. An appropriate order will be entered.[9]

---

6. R. Hursh & H. Bailey, *Products Liability* § 8.16; *see* also L. Frumer & M. Friedman, *Products Liability* § 8.05; Comment, n. 4, *supra* at 419.

7. L. Frumer & M. Friedman, *Products Liability* § 8.05.

8. *McCullough, supra,* also involved the problem of subsequent warnings.

9. Other lesser issues are dealt with in the separate order. Another contention made by Proctor & Gamble merits brief mention however. That is that the error of Mrs. Byrd's sister in skipping a step of the instructions is a superseding cause. Since this misuse was foreseeable it cannot, as a matter of law, be a superseding cause. *Montgomery Elevator Co. v. McCullough,* 676 S.W.2d at 780.