**Jackie TIPTON, Plaintiff–Appellee,**

**v.**

**MICHELIN TIRE COMPANY,**
**Defendant–Appellant,**

**Kelsey–Hayes Company, Defendant.**

**No. 95–5589.**

United States Court of Appeals,
Sixth Circuit.

Argued May 17, 1996.

Decided Dec. 5, 1996.

---

David F. Pratt (briefed), Varellas, Pratt & Cooley, Lexington, KY and F. Thomas Conway (argued), Louisville, KY, for Plaintiff–Appellee.

Penny R. Warren and William H. McCann (argued and briefed), Wyatt, Tarrant & Combs, Lexington, KY, for Defendant–Appellant.

Before: WELLFORD, NORRIS, and DAUGHTREY, Circuit Judges.

WELLFORD, Circuit Judge.

Plaintiff, Jackie Tipton, owner and operator of Tipton Motor Company in Irvine, Kentucky, seeks damages against defendant, Michelin Tire Company ("Michelin"), based on theories of products liability and negligence. In the course of business on June 3, 1989, Tipton attempted to mount a used, sixteen-inch Michelin tire on to what Tipton thought was a sixteen-inch rim, manufactured by Kelsey–Hayes Company ("Kelsey-Hayes"). In actuality, however, the rim's radius was 16.5 inches, giving rise to what is known in the tire industry as a "mismatch"

situation. The sidewall of the Michelin tire bore the following statement: "MOUNT ONLY ON APPROVED 16–INCH RIMS."

Using his mounting machine, Tipton placed the uninflated tire onto the rim. He then "seated" the tire's bead against the rim's flanges, which is normally accomplished by adding relatively small bursts of air pressure until the tire's bead pops into place. Once a tire is properly seated, it can safely be inflated to normal operating pressures. In mismatch situations, such as the one in controversy, there is a risk of the tire bursting if the person attempts to inflate the tire without it being properly seated.

In this case, Tipton removed the tire assembly from the mounting machine, placed it on the garage floor, and began inflating the tire. Warnings on the mounting machine cautioned against overinflating the tire when attempting to seat the bead and also warned against standing over or near the tire when inflating it. Tipton, however, failed to realize that the bead was not seated properly, continued to add air pressure to the tire, and exceeded the recommended tire pressure. The ensuing explosion caused the entire tire assembly to be catapulted toward Tipton, seriously injuring him.

The used tire at issue in this case was obtained by Tipton from an establishment selling old car parts and equipment,[1] was manufactured by Michelin in January, 1987, and contained what is known as a 19–strand bead.[2] In 1984, Michelin began testing a 21–strand bead in its sixteen-inch tires. In that year, Michelin built and sold approximately 10,000 tires with the 21–strand bead. In 1986 and 1987, Michelin manufactured, sold and surveyed approximately 385,000 tires with the 21–strand bead. Having purportedly concluded in 1991 that the new bead design did not significantly reduce tire performance and was more cost effective, Michelin began incorporating 21–strand beads into all of its sixteen-inch tires.[3] Among other as-

sertions, Tipton argues that the 19–strand bead in the disputed tire was defective.

In September, 1989, Tipton filed suit in Kentucky state court against Michelin and Kelsey–Hayes, alleging both negligence and strict liability. The action was promptly removed to federal court based on diversity jurisdiction. In September 1994, Tipton settled his claim against Kelsey–Hayes, and the remaining action against Michelin proceeded to trial.

At trial, Tipton's tire expert, George Edwards, opined that the tire at issue was defective based on his review of mismatch burst test data, which revealed an alleged relative weakness of the 19–strand bead as compared to Michelin's 21–strand bead and also as compared to a hexagonal bead designed by Goodyear, both of which were available in 1987. Another expert, Dr. Kenneth Laughery, testified that the tire was defective due to its lack of a warning as to the dangers of mismatch. Laughery reached this conclusion because his research and experience indicated that most tire changers are unaware of the possibility of mismatching a sixteen-inch tire and a 16.5–inch rim. Laughery also testified that Tipton's accident might have been avoided had Michelin somehow made an effort to warn, both on- and off-product, of the potential damages due to mismatch.

The jury awarded Tipton total damages of $301,149.87, apportioning fault as follows: (1) fifty-two percent to Tipton; (2) twenty-seven percent to Kelsey–Hayes; and (3) twenty-one percent to Michelin. In connection with the verdict, two interrogatories were propounded to the jury:

(1) Do you believe from the evidence that the Defendant, Michelin Tire Corporation, manufactured the tire in question, that the tire was in a defective condition unreasonably dangerous to the user, and that the defective condition was a substantial factor in causing the accident and Mr. Tipton's injuries?

---

**1.** Tipton did not object to the characterization of the place as a "junkyard."

**2.** The used Michelin tire at issue had lost from 30% to 40% of its tread depth at the time.

**3.** Michelin did not claim that the 21–strand tire was safer.

(1A) Do you believe from the evidence that the Defendant, Michelin Tire Corporation, *failed* to exercise ordinary care in the design, manufacture, sale or distribution of the tire and that the failure to do so was a substantial factor in causing the injuries to Mr. Tipton?

The jury answered "no" to the first question, but responded "yes" to the second question as the sole basis of Michelin's liability. The district court denied Michelin's motion for judgment notwithstanding the verdict and/or for a new trial. This timely appeal ensued.

▮▮▮ As indicated above, the jury found Michelin liable based on negligence, but did not find Michelin liable based upon strict liability. Michelin contends that this verdict is fatally inconsistent. When faced with such a claim, we look for a reasonable way to read the answers to interrogatories as expressing a coherent and reasonable view of the case. *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 665–66, 9 L.Ed.2d 618 (1963). We make this consistency determination by referring to the jury charge and the total context of the special verdict.[4]

In the case at bar, the district court instructed the jury as follows with respect to the strict liability claim:

[F]ind for Plaintiff if you are satisfied from the evidence as follows:

(a) that as manufactured by Michelin Tire Corporation the tire in question was in a defective condition unreasonably dangerous for use by a person or persons expected to use or be exposed to it; and

(b) that the unreasonably dangerous nature of the tire was a substantial cause of the accident and injury to Mr. Tipton.

In addition, the instructions defined the term "unreasonably dangerous" as:

creat[ing] such a risk of accidental injury to a prospective user that an *ordinarily prudent company* engaged in the manufacture of similar products, being fully aware

of the risk, would not have put it on the market.

A product is also "unreasonably dangerous" if use of the product in a foreseeable manner involves substantial risk of injury, and the *manufacturer fails to give adequate warning of such danger.*

The district court gave the following charge on the issue of negligence:

It was the duty of the Defendant, Michelin Tire Corporation, to exercise ordinary care in the design, manufacture, sale and distribution of the tire in question. If you believe that Michelin failed to exercise ordinary care and that such failure was a substantial factor in causing the injuries to Mr. Tipton, you will find for the Plaintiff. Otherwise, you will find for Michelin.

"Ordinary care" as applied to the Defendant ... means such care that an *ordinarily prudent tire manufacturer* would exercise in like or similar circumstances.

By its answers to the interrogatories, the jury found that the tire was not defective nor unreasonably dangerous, but that Michelin had been, in some respect, negligent in the design, manufacture, sale, or distribution of the tire. As indicated above, Michelin argued that the verdict was inconsistent in its motion for a judgment notwithstanding the verdict. The district court disagreed, stating that since "the tire was used in a manner for which it was not intended, the jury may not have found that the tire was defective [or] unreasonably dangerous, but may have determined that the Defendant failed in its duty of reasonable care in manufacturing the product." Furthermore, the district court noted one Kentucky case, wherein the court permitted a finding of liability on the basis of negligence with a contrary conclusion as to strict liability without constituting an inconsistent verdict. *See Byrd v. Proctor & Gamble Mfg. Co.*, 629 F.Supp. 602, 603 (E.D.Ky. 1986).[5]

---

4. Kentucky law determines what constitutes an inconsistent verdict, but federal law determines the procedure to be used to remedy the inconsistency. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Toth v. Yoder*, 749 F.2d 1190 (6th Cir.1984).

5. *Byrd* involved a products liability action brought by a plaintiff who lost a substantial portion of her hair after buying and using a Proctor & Gamble ("P & G") home permanent kit. P & G contended that the plaintiff's subsequent baldness resulted from her failure to follow the product instructions. Although the instructions with

On appeal, Michelin argues that in "design defect" cases, which include failure to warn cases, there is no real difference between strict liability and negligence, citing *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776 (Ky.1984), and *Jones v. Hutchinson Mfg., Inc.*, 502 S.W.2d 66 (Ky. 1973). We disagree with that argument as a general proposition, because although the concepts of strict liability and negligence may overlap in some areas, an inadequate warning may give rise to separate and distinct causes of action under either theory of recovery. *See Byrd*, 629 F.Supp. at 605. In negligence claims, the focus is on the conduct of the actor, whereas in products liability cases, the focus is on the condition of the product. *McCullough*, 676 S.W.2d at 780; *see also Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 568–69 (6th Cir.1985).

The district court in *Byrd* explained in detail the two "distinct but overlapping" theories under which a warning can be inadequate in a product case under Kentucky law. *Id.* at 605 & n. 4; *see also C & S Fuel, Inc. v. Clark Equipment Co.*, 552 F.Supp. 340, 347 (E.D.Ky.1982) (comparing the concepts of strict liability and negligence). The first theory involves a "warning as a part of the design." *Id.* In such a case, a product is unreasonably dangerous in design if it does not adequately warn the consumer that the product should not be put to a certain use. *Id.* (citing *Sturm, Ruger & Co., Inc. v. Bloyd*, 586 S.W.2d 19 (Ky.1979), where warnings put on an antique revolver were required as part of a safe design). In Kentucky, "warnings and instructions" are considered in determining whether a product is defective:

> the kit were clear, there was no warning that failure to follow them could result in extensive hair damage.
>
> The case was submitted to the jury on the alternative theories of strict liability and negligent failure to warn. The jury indicated that the permanent kit was not unreasonably dangerous, but that P & G had failed to exercise ordinary care to provide an adequate warning against foreseeable misuse. The defendant thereafter moved for judgment notwithstanding the verdict, arguing that the foregoing findings were inconsistent. The district court rejected P & G's posi-

The manufacturer is presumed to know the qualities and characteristics, and the actual condition, of his product at the time he sells it, and the question is whether the product creates "such a risk" of an accident of the general nature of the one in question "that an ordinarily prudent company engaged in the manufacture" of such a product "would not have put it on the market." *Nichols v. Union Underwear Co., Inc., supra*, 602 S.W.2d [429] at 433 [(Ky.1980)]. Considerations such as feasibility of making a safer product, patency of the danger, *warnings and instructions*, subsequent maintenance and repair, misuse, and the products' inherently unsafe characteristics, while they have a bearing on the question as to whether the product was manufactured "in a defective condition unreasonably dangerous," are all factors bearing on the principal question rather than separate legal questions.

*McCullough*, 676 S.W.2d at 780–81 (emphasis added, citing Restatement (Second), Torts § 402A); *see also Brock v. Caterpillar, Inc.*, 94 F.3d 220, 224 (6th Cir.1996). Where warnings are necessary to a safe design, a manufacturer is charged with hindsight regarding the potential risks involved.[6] *Id.; C & S Fuel, Inc.*, 552 F.Supp. at 347.

The second theory of recovery is based on principles of negligence, which can be found in the Restatement (Second), Torts § 388 entitled "Chattel Known to be Dangerous for Intended Use." Under that section, a supplier is subject to liability to those the supplier should expect to use the product if the supplier:

> (a) knows or has reason to know that the chattel is likely to be dangerous for the use for which it is supplied, and

tion, finding no inconsistency under Kentucky law on the question of an inadequate warning under the circumstances. *Id.* at 605.

---

6. In Kentucky, "the maker is not required to design the best possible product, or one as good as others make, or a better product than the one he has, so long as it is reasonably safe." *Jones v. Hutchinson Manufacturing, Inc.*, 502 S.W.2d 66, 69 (Ky.1973). Another way of putting "reasonably safe," as expressed in *Jones*, is whether the product was unreasonably unsafe or dangerous. *Id.*

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Byrd,* 629 F.Supp. at 605 (quoting RESTATEMENT (SECOND), TORTS § 388). Under the negligence theory of recovery, a manufacturer must "warn the consumer of non-obvious dangers inherent in the probable use of the product," even dangers from foreseeable misuse. *Byrd,* 629 F.Supp. at 605. In such a case, the manufacturer is not charged with hindsight, as with strict liability. *Id.* at 605 n. 5.

In answering "no" to the interrogatory on strict liability, the jury necessarily found that Tipton's tire was *not* in a "defective condition," and that it was not "unreasonably dangerous to the user." It also necessarily found, using the language in the jury instructions, that Michelin did not fail to give an "adequate warning" regarding the use of the tire "in a foreseeable manner," which involved any "substantial risk of injury." However, in answering "yes" to the interrogatory on negligence, assuming (as we must) that the jury followed the corresponding instructions, the jury found that Michelin failed to exercise ordinary care in the design or manufacture of the tire. In his complaint, Tipton did not mention the concept of or claim "mismatch" as a foreseeable danger. Rather, he claimed that there was a defective design by both Michelin and Kelsey–Hayes and misrepresentation or concealment of the "defect." At least one court interpreting the law of Kentucky has held that in order to hold a manufacturer liable under either strict liability or negligence, a jury must first find that the product in question was defective. *Sexton ex rel. Sexton v. Bell Helmets,* 926 F.2d 331 (4th Cir.), *cert. denied,* 502 U.S. 820, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). In *Sexton,* the Fourth Circuit stated:

> Although Kentucky also imposes the traditional duty of care on manufacturers to make products reasonably safe, when a product liability claim is based on a *design defect,* the articulation of liability, whether based on a negligent breach of a duty of care or on strict liability, reduces to the *single question of whether the product was defective.*

*Sexton,* 926 F.2d at 335 (emphasis added). In other words, proof of a *defective product* is essential to the products liability or the negligence claim. According to *Sexton,* the distinction between the two claims is of "no practical significance." *Sexton,* 926 F.2d at 336 (quoting *Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66, 69–70 (Ky.1973)). We agree that the two claims in this case depend on the existence of a defective product. As indicated above, however, the jury found no defective product for purposes of the strict liability claim, but did find that the product was defective for purposes of the negligence claim. That finding, we believe, is legally inconsistent.

Additionally, we believe that this case is distinguishable from *Byrd.* In *Byrd,* the special interrogatory on negligence allowed the jury to find the manufacturer liable for failure to give an adequate warning if the manufacturer "should have foreseen that a user of the Lilt home permanent would use it in a manner that might result in serious damage[s] to the hair." *Byrd,* 629 F.Supp. at 604 n. 2. That interrogatory focused on the conduct of the manufacturer, not the defect of the product's design. The district court respected the jury's verdict in light of the special concern of Kentucky's high Court "for the protection of the consumer from latent dangers in the use of products." [7] *Id.* at 606.

In the instant case, the special interrogatories and corresponding jury instructions were confusing at best. Both the strict liability and negligence instructions were directed toward the actions of an "ordinarily prudent" manufacturer that is "fully aware of the risk" of accidental injury. From the manner in which the instructions were propounded to the jury, it is difficult for this court to determine the distinctions between the two different theories of recovery. That

---

**7.** To the extent that *Byrd* did not require the finding of a defect as a predicate to a claim of negligence under the RESTATEMENT (SECOND), TORTS § 388, we question its holding.

confusion bolsters our finding that the jury's answers to the interrogatories were inconsistent.

Furthermore, the evidence that Tipton's tire was defective, either for lack of an adequate warning or otherwise, was debatable at best. Tipton admittedly had been changing, handling and dealing in tires for at least thirty years before this tragic episode. He did not adhere, in this instance, to the inflation warning never to inflate beyond forty pounds pressure, nor did he instruct his employees to follow that instruction. Rather, he "always put enough to what air [he] felt [they] needed." He recognized that "any kind of a mismatch is dangerous," but he did not examine the rim to determine its size before attempting to mount the Michelin 16-inch tire. Tipton admitted that he was not even aware at the critical time of the warning upon the side of the tire, or the tire size, or of the same warning on other similar Michelin tires.

In light of Tipton's own testimony, it would evidently not have made a difference if the language on the tire had contained the word "warning" or "danger." We find ample evidence in the record to support a finding that there was no failure in the design to render the tire unreasonably dangerous, nor any failure by Michelin to render an adequate warning about any known design defect. There is a questionable basis, therefore, on which to hold Michelin liable for injury in plaintiff's attempt to mount an obviously worn and deteriorated tire, which was inflated beyond the recommended pressure—even for a new tire.

In sum, we find that the jury's verdict was inconsistent for the reasons stated. One remedy for an inconsistent verdict is a new trial. *See* Fed.R.Civ.P. 49(e). Tipton, however, did not challenge the jury's negative finding on the strict liability claim, which finding undermines his negligence claim based on design or manufacturing defects. We agree with Michelin that the negligence theories that were not eliminated by the verdict of no defect (negligence in the sale or distribution of the tire) were devoid of evidentiary support. The evidence from Tipton's experts regarding bead design, on-

product warnings, and other alleged defects related to the product's design or manufacturing, not to the tire's sale or distribution. Accordingly, in light of the jury's finding of no defect, Tipton's negligence claim must necessarily fail. *See Jones, supra.*

In light of the foregoing, we **REVERSE** the judgment in favor of Tipton and direct the district court to enter a judgment in favor of Michelin.