RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

OLWEN MOELLER, Individually and as
Executrix of the Estate of Robert L. Moeller,
                                        *Plaintiff-Appellee,*

          *v.*

GARLOCK SEALING TECHNOLOGIES, LLC,
                                        *Defendant-Appellant.*

No. 09-5670

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 07-00065—John G. Heyburn II, District Judge.

Argued: July 20, 2011

Decided and Filed: September 28, 2011

Before: BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Cary Schachter, SCHACHTER HARRIS, LLP, Dallas, Texas, for
Appellant. John R. Shelton, SALES TILLMAN WALLBAUM CATLETT &
SATTERLEY, PLLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** Cary
Schachter, SCHACHTER HARRIS, LLP, Dallas, Texas, John K. Gordinier, Ilam E.
Smith, PEDLEY & GORDINIER, PLLC, Louisville, Kentucky, for Appellant. John R.
Shelton, Joseph D. Satterley, SALES TILLMAN WALLBAUM CATLETT &
SATTERLEY, PLLC, Louisville, Kentucky, for Appellee.

     BATCHELDER, C. J., delivered the opinion of the court, in which GUY, J.,
joined. GUY, J. (pp. 9–12), delivered a separate concurring opinion. MOORE, J.
(pp. 13–14), delivered a separate dissenting opinion.

1

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Chief Judge. Defendant-Appellant Garlock Sealing Technologies, LLC, ("Garlock"), a manufacturer of industrial sealing products, appeals the district court's denial of its motion for judgment as a matter of law following a jury verdict against it. Because we conclude that the evidence is not sufficient to support the jury's verdict, we REVERSE.

**I.**

Robert Moeller ("Robert"), a pipefitter, worked with asbestos-containing gaskets made by Garlock from about 1962 until about 1970. From 1962 until about 1975, he also sustained significant exposure to asbestos insulation. He died on April 19, 2008, of mesothelioma, a cancer of the lining of the lung. Prior to his death, Robert and Plaintiff-Appellee Olwen Moeller, the surviving wife of Robert and executrix of his estate, sued Garlock (and several others not party to this appeal) under various theories, including strict liability and negligence, alleging that Robert's exposure to Garlock's asbestos-containing gaskets was a substantial factor in causing Robert's injuries and death.[1] Garlock does not dispute that asbestos-containing products likely caused Robert's mesothelioma; rather, Garlock argues that the mesothelioma was caused by Robert's exposure to asbestos insulation, and that its own gaskets were not a substantial factor in causing the mesothelioma. The case was tried by a jury in February 2009.

At trial, the Plaintiff presented evidence that Garlock learned in the 1950s that its asbestos-containing gaskets may cause or contribute to cancer, but did not begin testing to determine the amount of asbestos fibers released by its products until 1980. She also presented evidence that Garlock placed no warnings on its gaskets during the time frame that Robert worked with them. Richard Hatfield, an expert for the Plaintiff,

———————————

[1] The case is properly in federal court due to diversity of citizenship. The parties agree that Kentucky law controls the substantive components of this case.

testified that he had tested gaskets substantially similar to those removed by Robert, and he concluded that Robert would have inhaled asbestos fibers in excess of the current Occupational Safety and Health Administration ("OSHA") regulations for an eight-hour work period.

With respect to causation, the Plaintiff presented the testimony of Dr. Arthur Frank, a medical doctor who serves as a professor in the Department of Internal Medicine at Drexel University. Frank sub-specialized for forty years in the study of occupational exposure to asbestos. He testified that Robert's exposure to asbestos from Garlock gaskets, along with his other exposures, contributed to Robert's mesothelioma. One of Robert's treating oncologists, Dr. Charles Webb, also testified. He stated that he treated Robert from December 2005 until he died on April 19, 2008, and that if Robert had worked for many years (as he did) scraping and grinding asbestos gaskets, and if Robert breathed those fibers, then that exposure would have caused his cancer.

In rebuttal, Garlock presented evidence that Robert had sustained substantial exposure to asbestos insulation products between 1962 and 1975. It also presented evidence that whereas asbestos insulation was banned in the 1970s, leading asbestos safety authorities believed that gaskets, such as those sold by Garlock, posed "no health hazard," and are sold lawfully in the United States even today. Garlock also suggested that the Plaintiff presented only evidence that Robert had installed Garlock gaskets (an activity that both parties agree did not create a risk of injury), not that he had ever removed them (the activity that the Plaintiff alleges caused the injuries). Garlock presented the testimony of Dr. James Crapo, a pulmonologist, who testified that the particular type of asbestos fibers found in Garlock gaskets could not have caused Robert's mesothelioma, and the asbestos exposure from the insulation was far more severe than any exposure from gaskets.

After the Plaintiff's evidence had been presented, Garlock moved for a directed verdict, arguing that the Plaintiff had failed to establish that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma. The court did not rule on the motion and instead submitted the case to the jury. The instructions for Question 1, dealing with

strict liability, told the jury to find for the Plaintiff if Garlock's product was defective and sold "without a reasonable notice or warning of danger." The instructions for Question 2, dealing with negligence, characterized the claim as one of "negligent failure to warn." Garlock objected to the instructions as duplicative. The court overruled the objection, and the jury ultimately answered "no" to the strict liability question (finding that Garlock's product was not defective by reason of failure to warn or otherwise), but "yes" to the negligence question (finding that Garlock was negligent for failing to adequately warn about its product). The jury returned an award for the Plaintiff in the amount of $516,094.

Subsequently, Garlock moved for judgment as a matter of law, renewing its previous argument that the evidence presented by the Plaintiff was insufficient to sustain the jury verdict, and also arguing that the jury verdict was inconsistent. Garlock moved for a new trial on the same grounds. The district court denied both motions, and Garlock filed this timely appeal. It argues that the district court erroneously denied its motion for judgment as a matter of law and that the district court should have excluded certain expert testimony presented by the Plaintiff.

## II.

Garlock argues that the district court erred by denying its motion for a judgment as a matter of law.[2] Specifically, it argues that the Plaintiff failed to establish that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma.

In diversity cases, we look to state law for the standard under which to review the denial of a motion for judgment as a matter of law. *Pivnick v. White, Getgey, &*

---

[2]The Plaintiff briefly argues that Garlock never presented its sufficiency of the evidence challenge to the district court. However, Garlock made an oral motion for judgment as a matter of law, which the district court accepted as "on any and all grounds that are available," and Plaintiff acknowledged the motion. Garlock subsequently submitted a written motion, in which it fully briefed its sufficiency-of-the-evidence argument. Garlock renewed its motion after the jury verdict, arguing that the verdict was inconsistent and, in any event, was not supported by the evidence. Garlock also noted its sufficiency-of-the-evidence objection when it submitted its proposed jury instructions. In light of these actions, Garlock preserved its sufficiency-of-the-evidence challenge. *Cf. Del Rio v. Toledo Edison Co.*, 130 F. App'x 746, 751 n.3 (6th Cir. 2005) (holding that a party preserved an issue for appellate review even though she merely "allude[d] to the argument" in district court and did not fully develop the argument until her appeal).

*Meyer Co.*, 552 F.3d 479, 483 (6th Cir. 2009). Under Kentucky law, the jury's verdict must be upheld if, "draw[ing] all fair and rational inferences from the evidence in favor of the party opposing the motion," the evidence is sufficient to sustain the verdict. *Spivey v. Sheeler*, 514 S.W.2d 667, 673 (Ky. 1974) (internal quotation marks omitted).

To prevail on a negligence claim, Kentucky law requires a plaintiff to prove that a defendant's conduct was a substantial factor in bringing about the harm. *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980). Causation requires a link between the specific defendant's conduct and the plaintiff's injuries. *See Estes v. Gibson*, 257 S.W.2d 604, 607 (Ky. 1953) (absent connection between a specific act and injury, there is no legal liability); *Cardinal Indus. Insulation Co., Inc. v. Norris*, 2009 WL 562614, at *8 (Ky. Ct. App. 2009) ("In the end, the asbestos defendant, like every tort defendant, remains entitled to have a causative link proven between that defendant's specific tortious acts and the plaintiff's injuries."). Substantial causation refers to the probable cause, as opposed to a possible cause. *See Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 873 (Ky. Ct. App. 2001). "[O]ne measure of whether an action is a substantial factor is the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (internal quotation marks omitted) (discussing causation in a diversity case based on Kentucky law); *see Cardinal*, 2009 WL 562614, at *8 ("The question whether [defendant's] acts probably caused [plaintiff's] mesothelioma must be viewed in the context of [plaintiff's] other substantial exposure to asbestos . . . .").

In their briefs, both parties suggest that the Plaintiff's experts testified that exposure to Garlock gaskets substantially caused Robert's cancer. ("[Dr. Webb] testified that Mr. Moeller's exposure to asbestos from gaskets was a substantial cause of his mesothelioma.")[3] However, briefs are no substitute for the record itself, and after conducting our own careful review of the record, including the testimony of each expert,

---

[3]We also note that at times, Garlock cites portions of expert testimony that were, in fact, excluded at trial. *See, e.g.*, Appellant's Br. at 24 (citing R. 100 at 117, containing excluded testimony only present in the deposition "so that [the judge presiding at trial] will have a complete record for . . . appeal." R. 100 at 116).

we must conclude that the Plaintiff failed to prove that Garlock's product was a substantial factor in bringing about the harm.  Here, the Plaintiff presented various witnesses to support her claim that Robert's mesothelioma was caused by his exposure to Garlock gaskets.  The Plaintiff claims that Drs. Frank and Webb provided this causal link.  However, Dr. Webb never testified that Robert's exposure to Garlock gaskets was a substantial factor in causing Robert's cancer, nor was Dr. Webb even certified as an expert on asbestos.  Similarly, Dr. Frank testified only that all types of asbestos can cause mesothelioma and that any asbestos exposure counts as a "contributing factor." ("All of his exposures—and one can't differentiate them—contributed to his developing his mesothelioma.").  That testimony does not establish that exposure to Garlock gaskets in and of itself was a *substantial* factor in causing Robert's mesothelioma.

At oral argument the Plaintiff expressly admitted—contrary to claims made in her brief—that her experts never explicitly testified that Robert's exposure to Garlock gaskets was a substantial factor in causing his mesothelioma.  However, she argued that the testimony was sufficient to allow the jury to *infer* that Robert's exposure to Garlock gaskets was a substantial factor in causing his mesothelioma.  In support of that argument, the Plaintiff relies on *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005).  In *Lindstrom*, a case governed by maritime law, this court noted that it "ha[s] permitted evidence of substantial exposure for a substantial period of time to provide a basis for the inference that the product was a substantial factor in causing the injury." *Id*.  However, the court cautioned that "where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id*.  The court also quoted with approval the following observation made by the district court in that case:

> [The plaintiff's expert] opines that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing Lindstrom's disease.  If an opinion such as [the plaintiff's expert's] would be sufficient for plaintiff to meet his burden, the Sixth Circuit's 'substantial factor' test would be meaningless.

*Id*. at 493.

Even if we assume that *Lindstrom* applies, the evidence presented by the Plaintiff was insufficient to allow a jury to infer that exposure to Garlock gaskets was a substantial cause of Robert's cancer. *Lindstrom* requires that a plaintiff present proof of "a high enough level of exposure," *id*. at 492; but the Plaintiff here presented no evidence quantifying Robert's exposure to asbestos from Garlock gaskets. There is testimony that Robert removed gaskets for several years, and that some of those gaskets were Garlock's. Robert testified that he worked with Garlock gaskets "every day," but the Plaintiff failed to establish how many Garlock gaskets he removed, or how frequently he removed—as opposed to installed—them.[4] The record also shows that Robert regularly tore out asbestos insulation during the relevant years, and that his exposure to asbestos from insulation would have been thousands of times greater than his exposure from removing gaskets.

While Robert's exposure to Garlock gaskets may have contributed to his mesothelioma, the record simply does not support an inference that it was a *substantial* cause of his mesothelioma. Given that the Plaintiff failed to quantify Robert's exposure to asbestos from Garlock gaskets and that the Plaintiff concedes that Robert sustained massive exposure to asbestos from non-Garlock sources, there is simply insufficient evidence to infer that Garlock gaskets probably, as opposed to possibly, were a substantial cause of Robert's mesothelioma. *See Martin*, 561 F.3d at 443 (holding that defendant's liability must be evaluated in the context of other exposures); *Cardinal*, 2009 WL 562614, at *8 (same); *cf. Bailey*, 95 S.W.3d at 873. On the basis of this record, saying that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume. *Cf. Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 223 (Pa. 2007).

---

[4]The Plaintiff does not allege that Robert's mesothelioma was caused by merely working with or installing Garlock gaskets; she argues that it was caused by cutting and removing them.

Because the evidence is insufficient to support the jury's verdict, the district court erred when it denied the Defendant's motion for judgment as a matter of law.

**III.**

For the foregoing reasons, we **REVERSE** the district court's denial of Garlock's motion for judgment as a matter of law.  Consequently, we need not address the other issues raised by Garlock in this appeal.

———————————

**CONCURRENCE**

———————————

RALPH B. GUY, JR., Circuit Judge, concurring.   I concur in Chief Judge Batchelder's well-reasoned opinion, but I would address the issue of jury instructions raised by Garlock because I think it provides an additional ground for reversal.

Acknowledging that courts should reconcile arguably inconsistent verdicts if possible, Garlock asserts that the jury's finding against strict liability for failure to warn of an unreasonably dangerous product is inconsistent with the jury's determination that it was *negligent* for "failure to warn."

In Kentucky, a product is defective for lacking a warning if the product, at the time it is sold, creates "'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149 (6th Cir. 1996) (quoting *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 422 (Ky. 1980)).

Garlock cites *Tipton* in support of its argument. *Tipton* involved a plaintiff who mounted a 16" tire on a mismatched 16.5" rim. The tire exploded, causing plaintiff's injury. The *Tipton* jury was instructed on both strict liability and negligence. As in this case, the jury found for defendant under a strict liability theory and for the plaintiff on the negligence case. We considered the specific jury instructions in the case, finding that both "claims in this case depend on the existence of a defective product." *Tipton*, 101 F.3d at 1150.[1]  Determining that it was inconsistent to find that the product in question

———————————

[1] In *Tipton*, the jury received the following interrogatories:

(1) Do you believe from the evidence that the Defendant, Michelin Tire Corporation, manufactured the tire in question, that the tire was in a defective condition unreasonably dangerous to the user, and that the defective condition was a substantial factor in causing the accident and Mr. Tipton's injuries?

(2) Do you believe from the evidence that the Defendant, Michelin Tire Corporation, failed to exercise ordinary care in the design, manufacture, sale or distribution of the tire and that the failure to do so was a substantial factor in causing the injuries to Mr.

was not in a defective condition for purposes of strict liability but was for purposes of negligence, we reversed.[2]

Kentucky's unpublished, similar asbestos case of *Cardinal Industries Insulation Co. v. Norris*, 2009 WL 562614 (Ky. App. 2009), also supports Garlock's argument. In *Cardinal Industries*, the court held that

> under the circumstances of this and similar cases, we are persuaded that the appellants' proposed negligent failure to warn instruction was redundant with the strict liability instruction actually given. In considering whether the asbestos was in a defective condition unreasonably dangerous, the jury was obligated to consider as one of the factors in reaching its determination whether warnings were required and, if so, whether those warnings were properly given.

*Id.* at *10. *See also Lane v. Deere and Co.*, 2003 WL 1923518 (Ky. App. 2003) (unpublished).

Although this case has facts different from those in *Tipton*, it appears that the opposite answers to the jury questions cannot be reconciled under Kentucky law.

Unlike Kentucky, many states have now adopted legislation or standard jury instructions that combine all of the liability theories into one form of action for products liability.[3] For that reason many of the cases from other jurisdictions which discuss the jury instruction issue found in this case are older cases. They are nonetheless quite uniform in reaching a result consistent with that which we reach here. *Sprankle v. Bower Ammonia & Chemical Co.*, 824 F.2d 409, 413 (5th Cir. 1987) is illustrative. The issue

---

Tipton?

The jury answered "no" to the first question, and "yes" to the second. *Tipton*, 101 F.3d at 1147-48.

[2]We distinguished the case of *Byrd v. Proctor & Gamble Mfg. Co.*, 629 F. Supp. 602 (E.D. Ky. 1986) in that decision. As in *Tipton*, the plaintiff in *Byrd* (who was harmed by chemicals in a home permanent solution) was successful under a negligence theory, but not on her strict liability claim. The district court did not disturb the verdict on defendant's motion for judgment notwithstanding the verdict, however, because the verdict questions clearly indicated that a finding of negligence depended on the jury's assessment of the conduct of the manufacturer, rather than any defect of the product's design. This is different than the instant case, where both instructions included the "failure to warn" language.

[3]See, for example, *Repola v. Morbark Indus., Inc.*, 934 F.2d 483 (3d. Cir. 1991) discussing New Jersey products liability law.

in *Sprankle* was the trial court's failure to submit a failure to warn issue to the jury under a negligence theory as well as a strict liability theory. In finding no error the court stated:

> Although conceptually different,[5] the two theories of liability each present the essential question whether an inadequate warning caused the plaintiff's injuries. The jury's finding under the strict liability theory that no failure to warn caused Sprankle's injuries thus cures any possible error in the district court's not submitting Sprankle's negligent failure to warn claim to the jury. Accordingly, for both of the above-stated reasons, we reject Sprankle's complaints concerning the failure to submit his theory of negligent failure to warn.
>
> > [5]Courts and commentators alike differ in the extent to which they find conceptual differences in failure to warn cases brought under negligence and strict liability theories. Those who view the two as conceptually distinct emphasize that a warning could satisfy a negligence standard and yet be inadequate for strict liability purposes. As one court described the distinction:
> >
> > > "In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's action in selling the article without a warning. The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate even though the actions of the seller were entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it."
> >
> > Since "strict tort liability shifts the focus from the conduct of the manufacturer to the nature of the product," this view maintains, liability may result in strict liability where it would not attach under a negligence theory. No court or commentator has suggested the reverse, however. The consensus thus seems to be that while a greater showing (*i.e.*, the additional proof of negligence) may be required of a plaintiff suing under a negligent failure to warn theory than one suing under strict products liability

> theory, in no event is "less" required. *Hence, although a jury finding against a claim of negligent failure to warn may not preclude a finding of strict liability, a jury finding against strict liability for failure to warn necessarily precludes a finding in favor of the plaintiff on a negligence theory.*

*Id.* at 413-14 (emphasis added) (citations omitted).

In this case, the jury was asked to find for plaintiff on her strict liability claim if it determined that, in pertinent part,

> as manufactured and marketed by Defendant, the asbestos-containing product was in a defective condition, unreasonably dangerous for use by persons expected to use it or be exposed to it, **without a reasonable notice or warning of the danger**.

(Emphasis added.).  The jury was also given instructions on plaintiff's negligence claim to "[i]ndicate on the Verdict Form at Question 2 whether [it found] for Plaintiff on her claim against Defendant for **negligent failure to warn**." (Emphasis added.)  In line with the reasoning discussed above, the jury's affirmative finding on the question of negligence was fatally inconsistent with its contrary finding for Garlock on the strict liability claim.

———————

**DISSENT**

———————

KAREN NELSON MOORE, Circuit Judge, dissenting.  I respectfully dissent from the majority's conclusion that insufficient evidence supported the jury's verdict for the plaintiff in this case.  The plaintiff presented evidence at trial from which the jury could conclude that Garlock products were a "substantial factor" in bringing about Robert's mesothelioma.  Because the facts bearing on causation were disputed and capable of more than one reasonable inference, it was appropriate for the district court to deny Garlock's motion for judgment as a matter of law following a verdict against it. *Sykes v. Anderson,* 625 F.3d 294, 305 (6th Cir. 2010).

Dr. Frank, the plaintiff's well-qualified expert, explained that mesothelioma is a dose-response disease; as a result, the likelihood of mesothelioma goes up with increased exposure to asbestos fibers.  The Sixth Circuit has stated that an expert's opinion that "every exposure to asbestos, however slight, was a substantial factor" was insufficient to satisfy causation because it would render the substantial factor test "meaningless." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005). The plaintiff, however, did not rely on testimony that low-dose exposures, "however slight," may contribute to the development of mesothelioma.

Instead, Dr. Frank reviewed Robert's medical records and occupational history and testified specifically that, in his opinion, Robert's exposure to the Garlock gaskets was a contributing cause of his mesothelioma.  Plaintiff presented expert testimony that removing Garlock gaskets in the manner Robert had employed generated asbestos dust that greatly exceeded OSHA guidelines for permissible exposure levels.  In accordance with this evidence, Dr. Frank testified that breathing the toxic dust from old Garlock gaskets contributed to Robert's mesothelioma.  When counsel for Garlock questioned Dr. Frank extensively about Robert's other asbestos exposures, Dr. Frank acknowledged that those other sources of asbestos dust were also contributing factors. Nonetheless, Dr.

Frank testified that Garlock products in particular were a cause of Robert's mesothelioma.

Garlock's main defense at trial was that the type of asbestos in Garlock gaskets at the level of exposure experienced by Robert does not cause mesothelioma. Because "differences in opinions among medical experts," when supported by peer-reviewed studies, "create material issues of fact which must be resolved by the jury," Dr. Frank's specific opinion that Garlock gaskets constituted a cause of Robert's illness precludes judgment as a matter of law for Garlock. *Glaser v. Thompson Med. Co.*, 32 F.3d 969, 975 (6th Cir. 1994). The defense expert acknowledged, furthermore, that government agencies and private health organizations, including the EPA and American Cancer Society, have adopted policies recognizing that asbestos fibers of the type in Garlock gaskets are capable of causing mesothelioma.

The evidence presented at trial—which included test results obtained from removing gaskets in the manner that Moeller had employed and testimony from a medical expert who had reviewed Robert's occupational history—permits the conclusion that Garlock products were a "substantial factor" in causing Robert's mesothelioma. *Lindstrom*, 424 F.3d at 492. Although "[t]he testimony conflicted as to whether Garlock's gaskets were dangerous," I believe that "the jury was entitled to weigh that testimony, ascribing credibility as it saw fit." *Garlock Sealing Tech., LLC v. Robertson*, No. 2009-CA-000483-MR, 2011 WL 1811683, at *5 (Ky. Ct. App. May 13, 2011). I therefore respectfully dissent.