RENDERED: AUGUST 18, 2022
MODIFIED: AUGUST 24, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0247-DG
2021-SC-0064-DG
2021-SC-0065-DG

PRIMAL VANTAGE COMPANY, INC.                    APPELLANT/CROSS-APPELLEE

V.

ON APPEAL FROM COURT OF APPEALS
NOS. 2018-CA-0045, 2018-CA-0063 & 2018-CA-0106
JEFFERSON CIRCUIT COURT NO. 12-CI-006326

KEVIN O'BRYAN                                   APPELLEE/CROSS-APPELLANT

AND

SANTÉ O'BRYAN                                   APPELLEE/CROSS-APPELLANT

AND

DENNIS MARTIN AND
MARGARET MARTIN                                 APPELLEES/CROSS-APPELLEES

**OPINION OF THE COURT**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

The Court, after granting a petition for rehearing, again hearing oral

argument, and extensive review of the record, now issues the following modified

Opinion:

This is a products-liability case in which Primal Vantage Company, Inc. appeals from a decision of the Court of Appeals affirming the trial court's judgment that awarded substantial damages to Kevin O'Bryan and Santé O'Bryan. The product at issue is a ladderstand manufactured by Primal Vantage that must be affixed to a tree to be used for hunting. While Kevin O'Bryan was using the ladderstand, the polypropylene straps securing the stand to the tree broke, the stand fell, and Kevin sustained serious injuries.

A jury found Primal Vantage liable for failure to warn and to instruct of the dangers associated with use of the straps. The jury awarded Kevin[1] damages for past and future medical and personal expenses, pain and suffering, and lost wages. The jury also awarded damages for loss of consortium to Kevin's ex-wife, Santé O'Bryan. The O'Bryans' claims against Dick's Sporting Goods, Inc., the retailer of the stand, and Dennis and Margaret Martin, the owners of the property where the accident occurred, were dismissed by the trial court.

We granted discretionary review to examine further the role of the trial court as evidentiary gatekeeper and clarify the law regarding failure-to-warn claims. This Court originally rendered an Opinion, authored by former Chief Justice John D. Minton, in this matter on August 18, 2022 that affirmed in part and reversed in part the Court of Appeals decision and ultimately remanded the case to the Jefferson Circuit Court for a new trial. We concluded

---

[1] Since both Kevin and Santé O'Bryan are appellees/cross-appellants in this action, we refer to Kevin by his first name to avoid confusion.

2

that the trial court abandoned its role as evidentiary gatekeeper and abused its discretion by allowing the jury to hear a wealth of other-incidents evidence before ultimately ruling that evidence inadmissible near the end of trial.

Kevin O'Bryan filed a petition for rehearing, arguing that this Court overlooked material facts and controlling law, and misconceived the issues presented on appeal. This Court granted rehearing and scheduled oral argument limited to the following issues:

> (1) did the trial court err in granting directed verdict on the design defect claims against Primal Vantage?

and

> (2) Was the evidence of other incidents admissible? If this evidence was not admissible, was its admission harmless?

After further review, we reaffirm our ultimate holding affirming the Court of Appeals opinion in part, reversing in part, and remanding to the trial court for a new trial. We also republish the August 18, 2022 Opinion with modifications only to Sections A and D.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Dennis Martin purchased a ladderstand at Dick's Sporting Goods and attached it to a tree on his property. The stand was manufactured by Primal Vantage and consisted of a two-person platform and an attached ladder. The ladderstand was not designed to be freestanding. Five polypropylene straps were required to secure the stand to a tree. The stand was sold with instructions and warnings.

In 2012, Kevin O'Bryan, his son, and a friend were given permission to hunt on the Martins' property. Kevin, his son, and the friend climbed the

3

ladder to the platform. Shortly after the three reached the platform, the straps broke, and the stand fell to the ground. Kevin suffered serious injuries.

Kevin and his then-wife Santé O'Bryan sued the Martins, the owners of the property and the stand; Dick's Sporting Goods, the retailer of the stand; and Primal Vantage, the manufacturer of the stand. The claims against the Martins were dismissed before trial based on Kentucky Revised Statute (KRS) 150.645, which grants immunity to landowners who give permission to another person to hunt on their property. All claims against Dick's Sporting Goods were dismissed by directed verdict following the close of evidence at trial.

The only remaining claims for the jury to consider were the failure-to-warn claims asserted against Primal Vantage. The jury found Primal Vantage liable for failure to provide reasonable warning and instruction regarding the risk attendant to the use of polypropylene straps to secure the ladderstand to a tree. The jury awarded damages to Kevin for past medical expenses, past personal-care expenses, future medical and personal-care expenses, pain and suffering and loss of enjoyment of life and lost wages. The jury also awarded Santé O'Bryan damages for loss of consortium. But the jury assigned fifty percent of the fault to Primal Vantage and fifty percent of the fault to Kevin. As such, the trial court reduced Kevin's and Santé's damage-award amounts by fifty percent and issued judgment accordingly.

Primal Vantage and the O'Bryans both filed cross-appeals. The Court of Appeals affirmed the judgment. Primal Vantage and the O'Bryans then filed cross-motions for discretionary review in this Court, which we granted.

4

## ANALYSIS

Primal Vantage asserts several errors: (1) the trial court improperly admitted evidence of other incidents of accidents and injuries involving ladderstands; (2) the trial court gave jury instructions that deviate from Kentucky law and violate the bare-bones doctrine; (3) statutory immunity under KRS 150.645(1) does not proscribe apportionment of fault to the landowners where the accident occurred; (4) an ex-spouse cannot recover for loss of spousal consortium damages and, if they can, damages must be limited to the time of marriage; and (5) Plaintiffs' counsel made repeated prejudicial references to China and Chinese locations to inflame the jury.

On cross-appeal, Kevin O'Bryan contends that the trial court made several errors: (1) the trial court erroneously granted Primal Vantage's motion for directed verdict on the design-defect claims; (2) the trial court erroneously excluded evidence of other incidents involving ladderstand accidents; (3) Primal Vantage failed to comply with discovery orders regarding other-incidents evidence; and (4) if a new trial is granted based on the apportionment instruction, the trial court's decision to grant summary judgment to the landowners based on statutory immunity in KRS 150.645(1) should be reversed.

Finally, on cross-appeal, Santé O'Bryan argues that the trial court erred by reducing her loss-of-consortium award by applying Kevin's fifty percent apportionment of fault.

5

**A. The trial court abused its discretion by failing to screen other-incidents evidence, allowing several other instances to be introduced, then declaring the evidence inadmissible, and failing to admonish the jury expressly not to consider the inadmissible other-incidents evidence.**

The trial court abandoned its evidentiary gatekeeper role and allowed introduction of a wealth of evidence of other injuries or accidents occurring during the use of ladderstands without determining the admissibility of the other-incidents evidence until near the end of trial. This error was magnified by several assurances offered by the trial court that introduction of dissimilar other-acts evidence would likely result in a mistrial and by the trial court's failure to admonish the jury clearly that the jury must not consider this inadmissible other-incidents evidence during deliberations.

Generally, "evidence of the occurrence or nonoccurrence of other accidents or injuries under substantially similar circumstances is admissible when relevant to . . . the existence or causative role of a dangerous condition, or a party's notice of such a condition."[2] "A requirement of substantial similarity between the earlier accidents and the one at issue is a matter of relevance to be decided in the discretion of the trial judge and will not be reversed unless there has been an abuse of discretion."[3] Abuse of discretion will be found where the trial court's decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[4]

---

[2] *Montgomery Elevator Co. v. McCullough ex rel. McCullough,* 676 S.W.2d 776, 783 (Ky. 1984) (quoting *Harris v. Thompson,* 497 S.W.2d 422, 429 (Ky. 1973)).

[3] *Id.* (internal quotation omitted).

[4] *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000).

6

In this case, counsel for Primal Vantage objected to introduction of other-incidents evidence through motions in limine. In response, the trial court applied a good-faith standard, generally denied all Primal Vantage's motions in limine, allowed discussion in the presence of the jury of 78 other instances of accidents or injuries involving ladderstands, and withheld ruling on admissibility of the other instances evidence until near the end of trial.

The trial court serves an important evidentiary-screening function to ensure that, to the extent possible, only relevant evidence is admitted.[5] Moreover, even in the context of relevant evidence, the trial court has a duty to balance the potential for undue prejudice against the probative worth of proffered evidence.[6]

Here, the trial court abdicated its gatekeeping role by allowing the jury to hear presentation of a wide range of other-incidents evidence without making any determination until near the end of the trial on whether the other instances were substantially similar to the accident underlying this suit.

---

[5] *See, e.g.*, *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007) (acknowledging "the trial court's unique role as gatekeeper of evidence"); *Dunnaway v. Commonwealth*, No. 2019-SC-0730-MR, 2021 WL 234773, at *2–3 (Ky. Jan. 21, 2021) ("[W]e are unconvinced the trial court abdicated its role as gatekeeper in this evidentiary matter[.]"); *Leatherman v. Commonwealth*, 357 S.W.3d 518, 529 (Ky. App. 2011); Kentucky Rule of Evidence (KRE) 402 ("Evidence which is not relevant is not admissible."); KRE 103(c) ("Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.").

[6] *See* KRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

Failure to screen the challenged other-incidents evidence was error because the jury heard about 78 other accidents and injuries involving ladderstands that the trial court ultimately ruled inadmissible.

The trial court amplified its error by cautioning that the admission of dissimilar other-incidents evidence would likely result in a mistrial but then failing to grant the mistrial when it ultimately ruled the evidence inadmissible. The trial court cautioned that evidence of unrelated incidents was "incredibly prejudicial evidence" and signaled at least four times that admission of dissimilar other-incidents evidence would likely result in a mistrial. Even so, after ruling that all other-incidents evidence presented at trial was dissimilar and therefore inadmissible, the trial court refused to grant a mistrial.

Taken together, the trial court's failure to screen the other-incidents evidence until near the end of trial, paired with the trial court's cautionary statements regarding a likely mistrial, and the ultimate ruling that all the other-incidents evidence that the jury heard was inadmissible, constitutes abuse of discretion. In other words, the introduction of this evidence was unfair, unreasonable, and unsupported by sound legal principles.

Kevin claims that the Court of Appeals properly concluded that the trial court did not abuse its discretion by allowing the jury to hear the inadmissible other-instances evidence. First, Kevin claims that the trial court was not required to make a preliminary or threshold determination on the admissibility of the other-incidents evidence. Of course, the trial court was not required to hold several mini-trials or make preliminary rulings on each of Primal

8

Vantage's motions in limine. And we acknowledge that a trial court has broad discretion in admitting evidence.[7]

However, the trial court's discretion is not unfettered and is limited by both the rules of evidence and the trial court's general obligation as evidentiary gatekeeper. For instance, when ruling on a motion in limine, the trial court "may rule on such a motion in advance of trial or may defer a decision on admissibility until the evidence is offered at trial."[8] Here, the trial court did neither. Instead, the trial court generally denied Primal Vantage's motions in limine without addressing the merits of the evidentiary challenges, allowed all of the other-instances evidence to be submitted to the jury, and only engaged in a substantive analysis regarding the admissibility of the evidence near the end of the trial. Thus, the trial court failed to comply with KRE 103(d) and abdicated its screening function to ensure that the jury not hear irrelevant or inadmissible evidence.

To be clear, we do not hold that a trial court must make a threshold determination about every evidentiary objection or motion in limine. No exact chronological procedure mandates when trial courts must make evidentiary determinations, and trial courts enjoy broad discretion in making evidentiary determinations. But, on this record, the trial court abandoned its function as gatekeeper by allowing the jury to hear this wide array of evidence before ruling at the end of trial that this evidence was inadmissible. This procedure is

---

[7] *Daugherty v. Commonwealth*, 467 S.W.3d 222, 231 (Ky. 2015).

[8] KRE 103(d).

9

improper in these types of products liability cases, and, on this record, pre-trial determinations of admissibility were undoubtedly necessary. On remand, the trial court must determine admissibility of the other-incidents evidence prior to trial. Making pre-trial determinations not only fulfills a trial court's duty to screen evidence and ensure only relevant evidence is admitted,[9] but also satisfies our standard that evidence of other incidents must occur "under substantially similar circumstances" and be "relevant to . . . the existence or causative role of a dangerous condition, or a party's notice of such a condition."[10]

Second, Kevin argues that the other-incident proof offered at trial satisfied the substantial-similarity standard. The trial court ultimately disagreed, of course, concluding that all the other-incident evidence introduced at trial was unrelated to the accident underlying this suit.[11] Of the other-incidents evidence introduced at trial, some of the incidents involved ladderstands made by other manufacturers, some of the incidents involved

---

[9] *See n. 5, supra.*

[10] *Montgomery Elevator Co.,* 676 S.W.2d at 783 (quotation omitted).

[11] The trial court discussed the dissimilarity between the other incidents and Kevin's incident when ruling on the parties' motions for directed verdict toward the end of trial. While granting directed verdicts for Dick's Sporting Goods, the trial court described the other incidents as "disparate and unrelated" and "not even close" to being substantially similar, noting the prejudice to Primal Vantage resulting from discussion of the other incidents. Although not explicitly stated, the trial court certainly implied that this evidence was inadmissible. Additionally, through statements made during the rest of the trial, briefs to this Court and assertions during oral argument, it appears both the trial court and the parties understood the inadmissibility ruling as applying to both Dick's Sporting Goods and Primal Vantage. In any event, the crux of this issue is that the trial court never explicitly instructed the jury as to what evidence was inadmissible.

10

accidents that occurred during installation of a ladderstand, and some incidents involved accidents attributable to a broken ladder, not broken straps. Simply put, our review indicates that Kevin failed to meet his burden of proving that the other incidents were substantially similar. Thus the trial court did not err in ultimately ruling that the evidence was inadmissible. On remand, Kevin will have another opportunity to establish substantial similarity and the trial court can make a determination as to whether the evidence is admissible because it is undoubtedly best positioned to do so. We reiterate that we do not hold that a trial court must make threshold determinations about every evidentiary objection or motion in limine. However, this record makes it clear that preliminary determinations are necessary to avoid the introduction of irrelevant and inadmissible evidence that poses a great risk of misleading and prejudicing the jury.

Third, Kevin contends that the trial court's directed verdict on the design-defect claims cured any prejudice caused by introduction of the other-incidents evidence. Kevin claims that since the other-incidents evidence related exclusively to the design-defect claims, the other-incidents proof did not relate to the remaining failure-to-warn claims. But Kevin's argument fails to recognize that notice and knowledge of an unsafe condition may be relevant to a failure-to-warn theory.[12] Under a failure-to-warn theory, "liability for a manufacturer follows only if it knew or should have known of the inherent dangerousness of the product and failed to accompany it with the quantum of

---

[12] *See* discussion *infra* Part II.B.

11

warning which would be calculated to adequately guard against the inherent danger."[13]  As such, the other-incidents evidence was relevant to the remaining failure-to-warn claims, and the trial court's directed verdict on the design-defect claims did not cure the prejudice resulting from introduction of the volume of other-incidents proof.

Fourth, Kevin argues that the trial court's admonitions and counsels' actions cured any prejudice caused by introduction of the other-incidents evidence.  The trial court gave the jury several admonitions.  For instance, the trial court explained that some evidence may be considered for some claims, but not others:

> Sometimes, in fact, a lot of times, there is a reason to allow something in for your consideration, but it is really limited. Like it is limited to a very narrow part of your decision.  And the danger is that you all might not be able to understand the purpose for each bit of this evidence, because it doesn't come with a big flashing sign that says, "only consider this for this" and "only consider this for that."  So, that's a lot of what we're talking about. . . .

> And I should have put boxes up that say[ ], this one goes to the claim that there's a defect in the construction. This one goes to the claim there's a defect in the materials.  This one goes to the claim there's a defect in the notice. . . .  I mean, there's a bunch of different stuff and I'm going to give you a better instruction eventually about that but what I'm telling you is that not everything you hear can be considered by you for every decision that you make.  All right?  With that in mind, I'm going to let them ask this question about this one area that does not get applied universally.

---

[13] *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010); *see also Stiens v. Bausch & Lomb Inc.*, 626 S.W.3d 191, 200–01 (Ky. App. 2020); *Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 708 (W.D. Ky. 2013) (applying Kentucky substantive law and explaining that "[g]enerally, a manufacturer has a duty to warn of dangers that it either knew or should have known").

Later that day, the trial court provided guidance to the jury regarding the number of other incidents that had been introduced and the limitations of the other incidents evidence:

> These folks know everything about this case. I know something about it. And you all only know what you hear inside the courtroom, and that's good. But you might make assumptions about what you've heard that are absolutely incorrect, and we're concerned about that. For example, nobody is suggesting that what happened in this case has happened 78 times before. It hasn't. That's not what they're suggesting. But my fear is that somebody is thinking, wow, this is the 79th time that one of these treestands has collapsed like this under the same circumstances. That is not the proof, and you should not assume that this is the 79th time that an event like this one has happened. It's not, and nobody is suggesting that it is, to the extent that anybody is thinking that right now, stop thinking that, because that is not true, and nobody wants you to think that is true.

Finally, during jury instructions, the trial court informed jurors that they were not to consider evidence the court had excluded:

> There are—there is testimony in this case which you have been asked to disregard, and it's not like I'm going to say, seriously forget it or I'm going to cauterize that part of your brain where that information is stored.

> What I'm saying is, that in making your decision, any of the testimony that I've asked you to disregard is not something that you may consider in reaching that decision. You have to keep it separate from that pile of evidence that you are making your decision from.

> So there's two piles, things that you consider and things that you can't, and you can't confuse those two piles. And as we go through this, counsel will kind of walk you through some of that, but it's important that you kind of monitor each other to make sure that your decision is based on the facts that you've heard inside this courtroom and the facts that you're allowed to consider in making that decision.

It is well-settled that "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error."[14]  The issue here is that the trial court never expressly instructed jurors that the other-incidents evidence was inadmissible.  The trial court provided generic admonitions to the jury regarding proper and improper use of the other-incidents evidence.  And the trial court instructed the jury to disregard evidence that the court instructed them to disregard.  The important point here is that the trial court never explicitly told the jurors to disregard the other-incidents evidence.

The trial court's first two admonitions included above were given before the trial court discussed the admissibility of the other-incidents evidence.  And, even after determining that none of the other-incidents evidence was substantially similar to the accident at issue in this case, the trial court did not explicitly instruct jurors to disregard the other-incidents evidence.  As such, the trial court's admonitions did not cure the prejudice related to the other-incidents evidence because the trial court did not properly admonish the jury on other-incidents evidence after finding it inadmissible.

Even so, Kevin argues that his counsel took steps to cure any prejudice, including informing the jury during closing arguments that the inadmissible other-incidents evidence was not to be considered during deliberations.  Despite Kevin's counsel's allegedly meliorative efforts in her closing argument, we remain unconvinced that those efforts cured the prejudice caused by introduction of the other-incidents evidence.  Again, the trial court functions as

---

[14] *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003).

14

the neutral gatekeeper to ensure, to the greatest extent possible, that jurors only hear admissible evidence during trial. The trial court informs jurors of the proper consideration of evidence using admonitions and jury instructions. Of course, "Kentucky has long employed the use of 'bare bones' jury instructions, avoiding an abundance of detail and providing only a framework of the applicable legal principles."[15] And "the 'bare bones' of the jury instruction can be 'fleshed out by counsel in their closing arguments if they so desire.'"[16] But here, the jury heard evidence of 78 instances of other accidents or injuries involving ladderstands. Then, after ruling all the other-incidents evidence inadmissible toward the end of trial, the court never expressly told the jury to disregard the other-incidents evidence during its deliberations. As a result, counsel's closing argument to the jury cannot cure the prejudice from the introduction of this heft of inadmissible evidence.

Kevin further contends that Primal Vantage's own counsel cured any potential error and waived any objection to the other-incidents evidence by introducing additional other-incidents evidence on cross examination and during closing argument. In other words, Kevin argues that Primal Vantage wants "to have its cake and eat it too" by arguing that the other-incidents evidence was inadmissible while also introducing self-serving other-incidents evidence. But Primal Vantage's position at trial is more accurately

---

[15] *Sutton v. Commonwealth*, 627 S.W.3d 836, 851 (Ky. 2021) (citing *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005)).

[16] *Id.* (quoting *Cox v. Cooper*, 510 S.W.2d 530, 535 (Ky. 1974)).

characterized as being stuck between a proverbial "rock and a hard place." The Court of Appeals correctly acknowledged that point, suggesting that holding that Primal Vantage waived its objection to admissibility of the other-incidents evidence would penalize effective advocacy. The trial court's failure to serve as evidentiary gatekeeper by delaying ruling until near the end of trial placed Primal Vantage's counsel in an unenviable strategic position as zealous advocates. Primal Vantage's counsel faced a Hobson's choice. First, Primal Vantage, believing that the other-incidents evidence was inadmissible, could make no mention of such evidence, allowing Plaintiffs' counsel to introduce the evidence without any rebuttal or differentiation from Primal Vantage. Second, Primal Vantage, fearing that the trial court may find some of the other-incidents evidence admissible toward the end of trial, could ask questions on cross-examination about other incidents to rebut the evidence offered by Kevin and differentiate the other incidents introduced at trial. Primal Vantage cannot be penalized for choosing the latter course of action considering the trial court's initial abandonment of its screening role.

Finally, Kevin asserts that even if introduction of the other-incidents evidence constituted error, any error was harmless, and a reversal for a new trial is not warranted. Error in the admission or exclusion of evidence is not grounds for reversal "unless refusal to take such action appears to the court inconsistent with substantial justice."[17] "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not

---

[17] Kentucky Rule of Civil Procedure ("CR") 61.01.

16

affect the substantial rights of the parties."[18] "When considering a claim of harmless error under CR 61.01, the court determines whether the result probably would have been the same absent the error or whether the error was so prejudicial as to merit a new trial."[19]

We cannot conclude that the introduction of the other-incidents evidence was harmless error. The jury heard evidence of 78 other incidents of accidents and injuries involving ladderstands. The references to other incidents began with Kevin's counsel providing a twenty-one-minute detailed description of seventeen other incidents during opening statements to the jury. The jury heard references to other incidents for eight days through eight witnesses. As such, the other-incidents evidence permeated the entire two-week trial. And the trial court's decision to withhold ruling on the objections to the other-incidents evidence, allow the jury to hear a wealth of other-instances evidence, rule all the other-incidents evidence inadmissible near the close of trial, and fail clearly to admonish or instruct the jury not to consider the other-incidents evidence during deliberations is inconsistent with substantial justice.

Additionally, the other-incidents evidence affected Primal Vantage's substantial rights. As previously discussed, knowledge of an unsafe condition is relevant to a failure-to-warn claim. So it is possible that the jury would have reached a different result but for introduction of the other-incidents evidence,

---

[18] *Id.*

[19] *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 69 (Ky. 2010).

which the trial court held inadmissible.  As a result, introduction of the other-incidents evidence was not harmless error, and a new trial is required.

In conclusion, the trial court erred by abandoning its role as evidentiary gatekeeper and allowing the jury to hear substantial evidence regarding other accidents and injuries involving ladderstands that were eventually ruled inadmissible at the end of trial.  Despite generalized, and poorly timed, attempts to separate these incidents in terms of applicability and explain their purpose to the jury, the trial court never explicitly told the jury to disregard the other-incidents evidence.  As such, this error affected Primal Vantage's substantial rights and was not harmless.  Therefore, the holding by the Court of Appeals regarding the other-incidents evidence is reversed, the trial court's judgment as to Primal Vantage must be vacated, and this action remanded for a new trial.

## B. The trial court's jury instructions regarding failure to warn were not erroneous.

Our analysis does not end after concluding that a new trial is warranted based on the other-incidents evidence.  This Court has consistently reviewed issues that are otherwise rendered moot if they are likely to recur on retrial.[20]

---

[20] *See, e.g., Roberts v. Commonwealth*, 599 S.W.3d 841, 854 (Ky. 2020); *Blane v. Commonwealth*, 364 S.W.3d 140, 154 (Ky. 2012); *Sanderson v. Commonwealth*, 291 S.W.3d 610, 614 (Ky. 2009); *Bell v. Commonwealth*, 245 S.W.3d 738, 743 (Ky. 2008) ("Because the judgment has been reversed for the foregoing reasons, we will address only those additional assignments of error that are likely to recur upon retrial."); *Terry v. Commonwealth*, 153 S.W.3d 794, 797 (Ky. 2005) ("We will also address other issues that are likely to recur upon retrial."); *Springer v. Commonwealth*, 998 S.W.2d 439, 445 (Ky. 1999) ("Because the other issues raised by the appellants are likely to recur upon retrial, those issues will also be addressed in this opinion.").

Primal Vantage argues that the trial court's jury instructions misstated Kentucky law on the failure-to-warn claims. Although this issue may be rendered moot in this appeal by our finding that a new trial is warranted based on the other-incidents evidence, we will address Primal Vantage's arguments regarding jury instructions on failure to warn because the issue is likely to recur on retrial.

Under Kentucky law, the concepts of negligence and strict liability underlying a failure-to-warn claim are "distinct but overlapping theories."[21] "[A]lthough the concepts of strict liability and negligence may overlap in some areas, an inadequate warning may give rise to separate and distinct cause of action under either theory of liability."[22]

Negligence claims focus on the conduct of the actor.[23] Under a negligence theory, "the manufacturer must 'warn the consumer of non-obvious dangers inherent in the probable use of the product,' even dangers from foreseeable misuse."[24] The manufacturer is not charged with hindsight regarding the potential risks involved in the design of the product under a negligence theory.[25]

---

[21] *See Byrd v. Proctor & Gamble Mfg. Co.*, 626 F. Supp. 602, 605 n.4 (E.D. Ky. 1986); *see also C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 343–44, 347 (E.D. Ky. 1982).

[22] *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149 (6th Cir. 1996) (applying Kentucky substantive law).

[23] *Tipton*, 101 F.3d at 1149.

[24] *Id.* (quoting *Byrd*, 629 F. Supp. at 605).

[25] *Id.* (citing *Byrd*, 629 F. Supp. at 605 n.5).

A strict-liability theory focuses on the condition of the product.[26]  In a strict-liability case, "[a] product may be unreasonably dangerous in design, unless accompanied by a warning that it should not be put to a certain use."[27]  Put differently, a manufacturer

> is *presumed to know* the qualities and characteristics, and the actual condition, of his product at the time he sells it, and the question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'[28]

If warnings are required as part of a safe design, the manufacturer is charged with hindsight regarding the potential risks involved in the design of the product.[29]

> The distinction between the negligence and strict liability theories

> is that negligence depends on what a prudent manufacturer, engaged in a business similar to that of the defendant, by the exercise of ordinary care actually should have discovered and foreseen, whereas strict liability depends on what he would have anticipated had he been (but regardless of whether he actually was or should have been) aware of the condition of and potentialities inhering in the product when he put it on the market.[30]

---

[26] *Tipton*, 101 F.3d at 1149.

[27] *C & S Fuel, Inc.*, 552 F. Supp. at 347; *see Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976); *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 568 (6th Cir. 1985) (citing *C & S Fuel, Inc.*, *supra*, with approval).

[28] *Montgomery Elevator*, 676 S.W.2d at 780 (emphasis in original) (quoting *Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980)).

[29] *Tipton*, 101 F.3d at 1149 (citing *Byrd*, 629 F. Supp. at 605 n.5).

[30] *Ulrich*, 532 S.W.2d at 200.

"Where [negligence] is actual, [strict liability] is postulated."[31]  Put differently, "negligence turns on actual knowledge of a defective condition [that is] unreasonably dangerous, or a condition which, under the exercise of ordinary care, should have been discovered or foreseen."[32]  Alternatively, "strict liability may be imposed where the eventual defect or resulting harm was merely speculative or hypothetical at best."[33]  While strict liability does not rely upon negligence, there is a close connection between the two theories based on the term "unreasonably dangerous."[34]  Both negligence and strict liability employ the concept of reasonable foreseeability.[35]

Here, the trial court provided four instructions on Kevin's failure-to-warn claims.  Instruction No. 1 concerned failure to warn based on a defective product.  Instruction No. 2 dealt with failure to instruct based on a defective product.  Instruction No. 3 explained failure to warn based on negligence and is identical to Instruction No. 1 except for the third paragraph, which required the jury to find that Primal Vantage, in the exercise of ordinary care, should have been aware that the ladderstand was unreasonably dangerous.  Finally, Instruction No. 4 provided that Primal Vantage could be liable based on failure to instruct under a negligence theory.

---

[31] *Id.*

[32] *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. App. 1999).

[33] *Id.*

[34] *Ulrich*, 532 S.W.2d at 200.

[35] *Id.*

Since negligence and strict liability are distinct, yet closely related, legal concepts, it was not error for the trial court to provide separate instructions for recovery under each theory. Here, Instruction No. 1 instructed the jury to find liability under the strict-liability theory of recovery if the jury found that the ladderstand was unreasonably dangerous if unaccompanied by a reasonable warning. Alternatively, Instruction No. 3 instructed the jury to find liability under the negligence theory of recovery if Primal Vantage, in the exercise of ordinary care, should have been aware that the ladderstand was unreasonably dangerous and failed to provide an adequate warning.[36] So, we agree with the Court of Appeals' conclusion that the jury instructions adequately covered both the negligence and strict-liability theories of recovery.

Primal Vantage argues that the trial court should not have given strict-liability instructions because the trial court granted a directed verdict in favor of the Defendants on Kevin's design-defect claim.

The use of the term *defective* has caused considerable confusion in the context of products liability. Both the negligence and strict-liability theories of recovery require the plaintiff to prove that the product was defective and was the legal cause of the injury.[37] Admittedly, some authorities suggest that the

---

[36] Instruction Nos. 2 and 4 are substantively identical to Instruction Nos. 1 and 3 except for telling the jury to find liability for failure to provide adequate instructions as opposed to adequate warnings. As a result, Instruction Nos. 2 and 4 also adequately captured the distinction between the negligence and strict liability theories of recovery.

[37] *See Tipton*, 101 F.3d at 1150 (holding that under Kentucky law, theories of negligence and strict liability require a jury to make an initial finding that the product was defective); *see also Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970) (holding that whether the action involves negligent design, negligent failure to adequately warn, or

distinction between the strict-liability and negligence theories is "of no practical significance."[38]  But, under certain circumstances, distinct causes of action may arise under either a negligence theory or a strict liability theory.[39]  As previously explained, negligence claims focus on the conduct of the actor, and strict-liability claims focus on the condition of the product.[40]  While there is overlap between the two theories, the negligence and strict-liability theories underlying a failure-to-warn claim are distinct theories.

Primal Vantage's contention that the trial court's directed verdict on the design and manufacturing claims precludes a strict-liability instruction is misplaced.  The "defect" underlying a strict-liability claim need not be a result of a manufacturing error.[41]  Instead, "a product is 'defective' when it is properly made according to an unreasonably dangerous design, or when it is not accompanied by adequate instructions and warning of the dangers attending its use."[42]  "The prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety."[43]  In other words, for the purposes of strict liability underlying a

---

the sale of a defective product that is unreasonably dangerous because of an inherent defect or inadequate warning, in every instance, the product must be a legal cause of the harm).

[38] *See Sexton ex rel. Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 336 (4th Cir. 1991) (applying Kentucky law).

[39] *Montgomery Elevator Co.*, 676 S.W.2d at 780.

[40] *Tipton*, 101 F.3d at 1149.

[41] *Ulrich*, 532 S.W.2d at 200 (citations omitted).

[42] *Id.*

[43] *Id.*

failure-to-warn claim, a product may still be "defective" even if the product does not have a design defect. As a result, the trial court's instructions on strict liability for failure to warn or instruct were proper.

Finally, Kevin argues that the four separate jury instructions are duplicative and violate the bare-bones doctrine. "We prefer 'bare bones' instructions to make the oft-confusing task of determining liability easier for the layperson to perform."[44] "But while simple instructions are preferred, correct and complete instructions are required."[45] In *Montgomery Elevator*, this Court explained that "[c]onsiderations such as . . . *warnings and instructions*, . . . while they have a bearing on the question as to whether the product was manufactured in a defective condition [that is] unreasonably dangerous, are all factors bearing on the principal question rather than separate legal questions."[46] So the trial court could have combined the warning and instruction considerations into the same instruction. But we do not find that the trial court committed reversible error by setting out separate instructions for warnings and instructions where the jury instructions were complete and accurate instructions on Kentucky law.

Accordingly, we affirm the Court of Appeals' decision that the trial court did not err in providing jury instructions regarding Kevin's failure-to-warn and failure-to-instruct claims.

---

[44] *Osborne v. Keeney*, 399 S.W.3d 1, 13 (Ky. 2012).

[45] *Id.*

[46] 676 S.W.2d at 780–81 (internal quotations omitted) (emphasis added).

**C. The Martins were properly excluded from apportionment of fault under KRS 150.645.**

Primal Vantage argues that the lower courts erred in concluding that fault could not be apportioned to the Martins under KRS 150.645. KRS. 150.645 provides that "[a]n owner . . . of premises who gives permission to another person to hunt . . . upon the premises shall owe no duty to keep the premises safe for entry or use . . . ."[47] KRS 150.645 "offer[s] protections for landowners who invite individuals onto their property for recreational use of land."[48]

First, Primal Vantage argues that Kentucky's comparative-fault statute, KRS 411.182, allows apportionment of fault even if a party may not have tort liability. But "[t]o find fault against a defendant, and thus allow apportionment, there must also be proof that the defendant breached a duty."[49] Ultimately, "[w]hether fault can be apportioned against someone with absolute immunity from liability is determined by construing the statute."[50] Here, the Martins are not within any of the categories specified in the comparative-fault statute; they are not parties, third-party defendants, or persons released under

---

[47] KRS 150.645(1).

[48] *Est. of David v. Pounds*, 553 S.W.3d 262, 265–66 (Ky. App. 2018).

[49] *CertainTeed Corp.*, 330 S.W.3d at 79; *see also Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("For fault to be placed on either party, a party must have *breached* his duty[.]" (Emphasis in original)); *Ashcraft v. Peoples Liberty Bank & Trust Co.*, 724 S.W.2d 228, 229 (Ky. App. 1986) ("If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence.").

[50] *Jefferson Cnty. Commonwealth Atty's Off. v. Kaplan*, 65 S.W.3d 916, 922 (Ky. 2001), *as modified on denial of reh'g* (Feb. 21, 2002).

subsection (4).  As a result, fault cannot be apportioned to the Martins "because they do not fall within the scope of those to whom fault can be apportioned against under KRS 411.182."[51]

Second, Primal Vantage contends that KRS 150.645 conflicts with Kentucky's comparative-fault statute and that the comparative-fault statute, which was enacted before KRS 150.645, should control.  But that argument fails for the same reasons discussed above.  It is true that "[t]he core principle of comparative negligence is that '[o]ne is liable for an amount equal to his degree of fault, no more and no less.'"[52]  But that core principle is inapplicable here because the General Assembly has absolved landowners like the Martins of any duty of care under KRS 150.645(1), and the Martins do not fit within any of the categories of persons to whom fault can be apportioned under KRS 411.182.

Finally, Primal Vantage contends that the jury should have been able to apportion fault to the Martins based on "clear evidence of the Martins' failure to maintain and inspect the ladderstand."  This argument is unavailing.  KRS 150.645(1) provides that landowners—like the Martins—who give permission for others to hunt on their land owe no duty of care to keep the premises safe. The only exception contained in the statute is for willful and malicious failure

---

[51] *Id.*; *see also Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 479–81 (Ky. 2001) (holding that fault could be apportioned to a settling nonparty under KRS 411.182(4)).

[52] *Regenstreif v. Phelps*, 142 S.W.3d 1, 6 (Ky. 2004) (quoting *Stratton v. Parker*, 793 S.W.2d 817, 820 (Ky. 1990)).

to guard against a dangerous condition. As a result, the Martins' alleged failure to maintain and inspect the ladderstand, without some allegation that they acted willfully or maliciously, is of no moment.

In sum, the lower courts correctly concluded that fault could not be apportioned to the Martins under KRS 150.645(1). As a result, the portion of the Court of Appeals' decision precluding apportionment of fault to the Martins is affirmed.[53]

### D. Directed Verdict in Favor of Primal Vantage on Design-Defect Claims Was Appropriate.

Kevin claims that the trial court erroneously granted a directed verdict in favor of Defendants on the design-defect claims. When a motion for directed verdict is made, "a trial court 'must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion.'"[54] "As a reviewing court, we 'must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.'"[55] A directed verdict is appropriate "where there is no evidence of probative value to support

---

[53] We do not address Kevin O'Bryan's alternative arguments regarding apportionment of fault to the Martins because those arguments are contingent upon reversal based upon the apportionment instruction. Similarly, the Martins make several arguments in their brief regarding the constitutionality of KRS 150.645, whether there is evidence that the Martins acted willfully or maliciously, and concerning whether the Martins are liable as suppliers of chattel. We do not address these arguments because they were not raised in Primal Vantage's principal brief. *See Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991) ("Ordinarily, this Court confines itself rather closely to deciding only those issues which the parties present."); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (discussing the principle of party presentation of issues).

[54] *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (quoting *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998)).

[55] *Id.* (quoting *Bierman*, 967 S.W.2d at 18).

an opposite result" because "the jury may not be permitted to reach a verdict upon speculation or conjecture."[56] This Court reviews a trial court's ruling on a motion for directed verdict for clear error.[57]

To prevail on a design-defect claim, a plaintiff must present proof of "an alternative safer design, practicable under the circumstances."[58] Therefore, a directed verdict is only proper in a design-defect claim where there is no evidence of probative value to support that there was "an alternative safer design, practicable under the circumstances."[59] "In a design defect case, courts use some form of risk-utility analysis to assess the decisions made by manufacturers with respect to the design of their products."[60] Since a manufacturer chooses the design of a product, the emphasis is on the manufacturer's conduct, not the allegedly defective product:

> A conscious decision to design a product in a certain manner necessitates that the focus be on conduct rather than the product. Hence, the trier of fact must employ a risk-utility balancing test that considers alternative safer designs and the accompanying risk pared against the risk and utility of the design chosen "to

---

[56] *Id.* (internal quotations and alteration omitted).

**[57]** *Id.*

[58] *Trent v. Ford Motor Corp.*, 2 F. Supp. 3d 1022, 1026 (W.D. Ky. 2014) (applying Kentucky law); *McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998); *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 126 (Ky. 1991) ("Except where the defect is obvious (as when a Coke bottle explodes), the plaintiff must usually show that some alternative way of manufacture or design was both safer and feasible." (quoting Richard O. Lempert & Stephen A. Saltzburg, *A Modern Approach to Evidence*, 187–89 (1st ed. 1977))); *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 16 (Ky. App. 2003) ("The record indicates that there are no reasonably available alternatives to bacteria-laced oysters.").

**[59]** *Id.*

[60] *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003).

determine whether … the manufacturer exercised reasonable care in making the design choices it made."[61]

Admittedly, Kentucky case law is scant on the precise elements a plaintiff must prove to recover on a design-defect claim. Many of the authorities applying Kentucky law cite persuasive federal authority for the elements of a design-defect claim under Kentucky law. And several cases discussing alternative designs concern "crashworthiness" or "enhanced injury" cases, where the plaintiff claims that a defect in a motor vehicle caused injuries over and above those which would have been expected in the collision absent the defect. Regardless, to recover for a design defect under Kentucky law, a plaintiff must establish existence of an alternative, safer design that is practical under the relevant circumstances and, as such, it was Kevin's burden to "present some evidence that would incline a reasonable person to believe"[62] an alternative, safer design practical under the relevant circumstances existed.

With these considerations in mind, we review whether the trial court clearly erred in granting Defendants a directed verdict with respect to Kevin's arguments that stronger metal, chains, and a Lockjawz system constituted safer alternatives to the use of polypropylene straps.

Here, the trial court's directed verdict in favor of Defendants on the design-defect claims was proper because there was insufficient evidence to allow a reasonable juror to conclude that there was a safer, practical

---

[61] *Id.* (quoting *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 329–30 (Mich. 1995)).

[62] *Toler,* 458 S.W.3d at 285 (quotation omitted).

alternative to the use of Q195 steel. Kevin claims that the Q195 steel used in the Primal Vantage ladderstand was too weak and bent after the polypropylene straps affixing the stand to the tree broke. Dr. Alan Johnson, Kevin's expert in materials science, testified that a stronger metal would be less likely to bend. Even so, it is undisputed that the ladderstand at issue here was not designed to be freestanding. Instead, the ladderstand was designed to be affixed to a tree using polypropylene straps. And here, the polypropylene straps failed, causing injuries to Kevin. In fact, Dr. Johnson testified that the Q195 steel used in the ladderstand at issue would not have bent if the polypropylene straps had not broken.

As a result, it is not apparent that the use of stronger metal in the ladderstand at issue would be a safer alternative to the Q195 steel where the ladderstand was not designed to be freestanding and the method for affixing the stand to a tree or other object failed. As the trial court repeatedly explained to counsel, the evidence at trial demonstrated that Kevin's design defect claims focused on the use, fitness, and viability of polypropylene straps. Kevin's incident was not caused by the bending of the Q195 steel. Rather, the bending of the Q195 steel was an effect of the polypropylene straps breaking. In sum, the trial court did not err in granting a directed verdict to Defendants on Kevin's design defect claim as to metal because there was insufficient evidence to allow a reasonable person to conclude that an alternative safer material practical under the circumstances was available.

Kevin also contends that Primal Vantage could have used chains to affix the ladderstand to a tree instead of the polypropylene straps. The evidence at trial established that the use of chains to support ladderstands was widely discontinued in the industry approximately twenty years before the accident that occurred here. Of course, we have rejected the notion that "purported compliance with industry standards absolves [a defendant] of liability."[63] But, as we recognized in *Nichols*, a manufacturer's compliance with industry standards in the design of a product is a relevant factor in determining whether a product is defective.[64]

Trial testimony indicated that chains may have been discontinued because chains could not be tightened down, allowing the ladderstand to rotate on the tree. Other trial testimony relayed instances in which a chain was used to secure a stand to a tree and the ladder broke because the tree grew, and the chain did not stretch in response to the tree growth. Regardless, Kevin's expert testified that he was unaware of chains currently being used by any manufacturer to secure ladderstands to a tree.[65] More importantly, the expert failed to provide proof that the use of chains was a safer and practical alternative to the use of polypropylene straps to affix a ladderstand to a tree. For instance, Kevin's expert testified that the industry "should have looked at

---

[63] *Commins v. Genie Indus., Inc.*, No. 3:16-CV-00608-GNS-RSE, 2020 WL 1189937 at *23 (W.D. Ky. Mar. 12, 2020) (citing *C.D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534 (Ky. 1956)).

[64] *Nichols*, 602 S.W.2d at 433.

[65] The expert testified that he was aware of one manufacturer that used chains to secure a hang-on stand to a tree, not a ladderstand.

the hazard and designed a better way to tighten that chain down," instead of using polypropylene straps. But proof that chains had been used in the industry is not proof that chains were a safer or practical alternative to straps, especially where other evidence suggested that the use of chains presented its own safety concerns. As a result, while there was evidence that chains could conceivably be used as an alternative method of affixing a ladderstand to a tree, we cannot conclude that the trial court's ruling was clearly erroneous because, based on the evidence, a reasonable person could not believe that chains were a safer, practical alternative to the use of polypropylene straps.

Finally, Kevin asserted that a Lockjawz device, which is a large clamp that grasps the tree to hold a ladderstand in place, was a feasible alternative design. It is undisputed, however, that the Lockjawz device was not developed until after the ladderstand at issue in this case was produced. Moreover, Kevin's expert testified that he had only seen pictures of the Lockjawz device on the internet and could not testify as to whether the device was safer than the use of straps. Therefore, Kevin was not entitled to a directed verdict in his design defect claim as to the Lockjawz device because the Lockjawz device was nonexistent when the ladderstand used here was produced, and, as a result, there was no evidence as to whether it was a safer or more practical alternative to polypropylene straps. As such, the trial court did not err in granting the Defendants a directed verdict on Kevin's claim that the Lockjawz device was a safer, practicable alternative to polypropylene straps.

32

In conclusion, the trial court's directed verdict in favor of Defendants on the design-defect claims was not clearly erroneous. The trial court's directed verdict on the design-defect claims is affirmed.

### E. Assignments of Error Regarding Loss of Spousal Consortium Are Not Properly Considered in this Appeal.

Santé O'Bryan was awarded $80,000 for her loss-of-consortium claims. That award was offset by 50% based on the jury's finding that Kevin O'Bryan was 50% at fault for the accident that occurred. In this appeal, Santé raises several issues regarding the propriety of the loss-of-consortium award, including whether the trial court erred by offsetting her loss-of-consortium claim by Kevin O'Bryan's 50% apportionment of fault.

As previously discussed, this Court consistently considers moot issues that are likely to recur upon retrial. But consideration of a moot issue may be inappropriate where the recurrence of issues on retrial is dependent upon proof to be presented at trial.[66] While a spouse's claim for loss of consortium is an independent cause of action,[67] it is not a separate injury, but is derivative of the injured spouse's personal-injury claim.[68] So, on retrial, Santé O'Bryan will

---

[66] *See Jones ex rel. Jones v. IC Bus, LLC*, 626 S.W.3d 661, 682 (Ky. App. 2020) ("[E]ven though our decision reinstates claims upon which punitive damages could be found, we cannot say whether this issue is likely to recur if the case is retried as it will be dependent upon proof then presented. Therefore, because it is neither likely nor unlikely that the issue of punitive damages will recur on retrial, we deem discussion of it—at least at this point—improper and decline to do so.").

[67] *Floyd v. Gray*, 657 S.W.2d 936, 938 (Ky. 1983).

[68] *Daley v. Reed*, 87 S.W.3d 247, 248 (Ky. 2002); *see also Metzger v. Auto-Owners Ins. Co.*, 607 S.W.3d 695, 698 (Ky. 2020) (characterizing spouse's claim as "a derivative claim for loss of spousal consortium").

33

only recover for loss of spousal consortium if two contingent events occur: (1) Kevin O'Bryan succeeds on the merits of his claims against Primal Vantage; and (2) the jury finds that Santé O'Bryan is entitled to recover for loss of spousal consortium. Both contingent events are completely dependent upon the proof to be presented on retrial and the jury's findings. As a result, because it is neither likely nor unlikely that the issue of loss of spousal consortium will recur on retrial, we deem discussion of that issue premature and decline to consider the issues raised in this appeal regarding loss of spousal consortium.[69]

### F. Alleged Prejudicial References to China are not Properly Considered in this Appeal.

Primal Vantage argues that Plaintiffs' counsel made improper and irrelevant references to China and Chinese locations and names at trial. Whether the issue of references to China will recur on retrial is dependent upon proof to be presented at trial. And the trial court is best positioned as evidentiary gatekeeper to consider the relevance and admissibility of any evidence on retrial, including potentially prejudicial references to China or Chinese locations. So we decline to render an advisory opinion on an issue that may or may not occur in the future on retrial.[70]

---

[69] For clarity, we take no position on whether Santé O'Bryan should recover for loss of spousal consortium on remand. We simply decline to discuss the issues concerning loss of spousal consortium raised in this appeal because the recurrence of those issues and assignments of error depends upon the occurrence of two contingent events that are dependent upon the proof to be presented on retrial.

[70] *See Jones*, 626 S.W.3d at 682 (declining to address a moot issue that is neither likely nor unlikely to recur on retrial); *see also Nordike v. Nordike*, 231 S.W.3d

### G. We Need Not Rule on Enforcement of Discovery Orders in this Appeal.

On cross-appeal, Kevin summarily argues that Primal Vantage failed to comply with discovery obligations and trial court orders compelling production of evidence. Kevin contends that, in the event of a new trial, full and timely production of discoverable other incidents should be required. Though Kevin cites to one trial court order, it is unclear the exact discovery issue(s) Kevin challenges on appeal. In any event, the trial court is in the best position to manage discovery issues and resolve any evidentiary disputes concerning other-incidents evidence in the first instance on retrial. We take no position in this decision on whether other-incidents evidence is discoverable on retrial.

### CONCLUSION

The trial court abused its discretion and abandoned its role as evidentiary gatekeeper by allowing substantial amounts of evidence of other incidents to be presented to the jury, threatening that a mistrial would likely be declared if this evidence was found inadmissible, ruling near the end of trial that the other-instances evidence was indeed inadmissible, and then failing properly to admonish the jury to ignore the inadmissible other-incidents evidence during its deliberations. Even so, the trial court's jury instructions on failure to warn were not erroneous, the trial court correctly concluded that fault could not be apportioned to the Martins under KRS 150.645, and the trial court's directed verdict in favor of Defendants on the design-defect claims was

733, 739 (Ky. 2007) ("The Court will not render advisory opinions or consider matters which may or may not occur in the future.") (internal citation omitted).

not clearly erroneous. As a result, we affirm the Court of Appeals' holding regarding the jury instructions on the failure-to-warn claims and the apportionment of fault to the Martins, we further affirm the trial court's directed verdict to Defendants on the design-defect claims, but we reverse the holding of the Court of Appeals in all other respects as to Primal Vantage.[71] Accordingly, the trial court's judgment is reversed, and this action is remanded to the trial court for a new trial.

VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., sitting. All concur. Thompson, J., not sitting.

---

[71] The trial court's directed verdict in favor of Dick's Sporting Goods, Inc., is undisturbed by this decision. The trial court's directed verdict as to Dick's Sporting Goods was not directly challenged in this appeal. As a result, we have not considered and do not reverse the trial court's directed verdict on all claims against Dick's Sporting Goods.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, PRIMAL VANTAGE COMPANY:

Milton S. Karfis
Clark Hill PLC

Griffin Terry Sumner
Casey Wood Hensley
Frost Brown Todd LLC

COUNSEL FOR APPELLEE/CROSS-APPELLANT, KEVIN O'BRYAN:

Ann B. Oldfather
R. Sean Deskins
Oldfather Law Firm

COUNSEL FOR APPELLEE/CROSS-APPELLANT SANTÉ O'BRYAN:

Paul A. Casi
Jeff W. Adamson
Paul A. Casi, II, P.S.C.

COUNSEL FOR APPELLEES/CROSS-APPELLEES, DENNIS I. AND MARGARET M. MARTIN:

Diane M. Laughlin
Emily C. Lamb
Bryce Lee Cotton
Blackburn Domene & Burchett, PLLC